**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x

|  |  |  |
|---|---|---|
| **In re,** | : | |
| | : | |
| **JSANG KEI LAU,** | : | |
| | : | **1:20-cv-01930 (ALC)** |
| Debtor. | : | |
| | : | **OPINION & ORDER** |
| -------------------------------------------------------- | x | |
| **JSANG KEI LAU,** | : | |
| | : | |
| Appellant, | : | |
| | : | |
| -against- | : | |
| | : | |
| **HSBC MORTGAGE CORP., ET AL** | : | |
| | : | |
| Appellees. | : | |

--------------------------------------------------------------x

**ANDREW L. CARTER, JR., United States District Judge:**

Appellee U.S. Bank Trust, N.A., as Trustee for LSF10 Master Participation Trust, by Caliber Home Loans, Inc. ("Appellee" or "LSF10"), moves to dismiss the appeal filed by Jsang Kei Lau ("Appellant" or "Mr. Lau") seeking review of the February 20, 2020 decision of the United States Bankruptcy Court for the Southern District of New York denying Appellant's Motion to Extend the Automatic Stay and terminating the automatic stay (the "Appeal").

After careful consideration, Appellee's motion to dismiss Mr. Lau's Appeal is

**GRANTED**.[1]

---
[1]     The Court is in receipt of a number of letters filed by Mr. Lau, ECF Nos. 31, 33, 35, 36, and the response filed by LSF10, ECF No. 34. Mr. Lau requested that Appellee's reply brief be stricken because it was not timely served and because an attorney who had not filed a Notice of Appearance signed the reply brief. ECF Nos. 31, 33, 35, 36. This request is **DENIED** and the Court will consider Appellee's reply brief in deciding their motion to dismiss Mr. Lau's Appeal.

     Mr. Lau has been served with the brief and was not prejudiced by receiving it late, as sur-reply memoranda are not accepted without prior permission of the Court. Furthermore, the Court is not aware of any rule requiring a brief be stricken because an attorney who had not filed a Notice of Appearance signed the brief. In any event, Mr. Lau was not prejudiced by this because that attorney filed a Notice of Appearance within a week of filing the reply brief. ECF No. 32. The Court also subsequently granted that attorney's motion to withdraw from the case. ECF No. 38. Mr. Lau also noted alleged "misconduct" by the Pro Se Office because they "refused to file [a] letter" submitted

# BACKGROUND[2]

## A.  The Mortgage and Foreclosure Action

On or about September 27, 2006, Mr. Lau executed a promissory note (the "Note") in favor of HSBC Mortgage Corporation (USA) ("Original Lender") which memorialized an obligation to repay a loan of $410,000 plus interest. LSF10 Mot., Ex. A. This Note was secured by a mortgage given by Mr. Lau in favor of Mortgage Electronic Registration Systems, Inc. ("MERS, Inc.") on the property located at 62 Rivington Street, Unit 8B, New York, NY 10002 (the "Mortgage"). LSF10 Mot., Ex. B.

The Mortgage went through a number of assignments: (1) on November 1, 2011 from MERS, Inc. to HSBC Bank USA, N.A. ("First Assignment"), LSF10 Mot., Ex. C;[3] (2) on January 18, 2017 from HSBC Bank USA, N.A. to NationStar Mortgage LLC ("Second Assignment"), LSF10 Mot., Ex. E; (3) on January 26, 2018 from NationStar Mortgage LLC to Specialized Loan Servicing, LLC ("SLS") ("Third Assignment"), LSF10 Mot., Ex. F; and (4) on February 11, 2019 from SLS to LSF10 Master Participation Trust ("LSF10") ("Fourth Assignment"), LSF10 Mot., Ex. I.[4] LSF10 is the present owner and holder of the Note and the

---

by Mr. Lau. ECF Nos. 35-36. The Court is now in receipt of that letter which also alleged "possible misconduct" by the Pro Se Office because they recorded the filing date of some of Mr. Lau's submissions on ECF as one business day after they had been submitted to the Pro Se Office. Mr. Lau suffered no prejudice from the alleged misconduct as the Court considered the documents that needed to be filed by a particular deadline as timely. *See* ECF No. 29.

[2]     The following summary of relevant facts is drawn from the parties' moving papers and exhibits. For ease of understanding and reference, the Court has put in parenthesis the corresponding ECF number (and ECF page number(s)) for each of Appellant's exhibits cited.

[3]     On October 15, 2012, MERS, Inc. signed a corrective assignment of the Mortgage to correct the Assignor's name in the First Assignment. LSF10 Mot., Ex. D.

[4]     Appellant asserts that Appellee's Exhibit I documenting the assignment from SLS to LSF10 is "fake." *See, e.g.,* Lau Aff. ¶ 21. However, a search on ACRIS reveals that the assignment is registered with the NYC Department of Finance. *See* https://a836-acris.nyc.gov/DS/DocumentSearch/DocumentImageView?doc_id=2019021400031001. Additionally, Appellant's own exhibits show that he received a "Notice of Sale of Ownership of Mortgage Loan" from LSF10 dated December 20, 2018, informing him that his mortgage loan had been sold to LSF10 and a "Notice of Servicing Transfer" from SLS dated January 3, 2019, informing him that the servicing of his loan was being transferred to Caliber Home Loans, Inc. effective January 22, 2019. Lau Aff., Ex G (ECF No. 26-4 at 72-75). It does appear that on July 25, 2019 SLS signed a corrective assignment of the Mortgage to correct the instrument number. Lau Aff., Ex. 18 (ECF No. 26-6 at 35, 37, 39-40). However, this corrective assignment still lists LSF10 as the assignee and reinforces the fact that there was an assignment on February 11, 2019 from SLS to LSF10. *See id.* at

Mortgage.

Mr. Lau defaulted on the Note and the Mortgage and has not made a payment since September 1, 2008. LSF10 Mot. at 4. On February 9, 2009, the Original Lender commenced an action to foreclose the Mortgage by filing a foreclosure complaint in the Supreme Court of New York, New York County (the "State Court") under index number 101869/2009 (the "Foreclosure Action").[5] LSF10 Mot., Ex. G; Lau Aff., Ex. KK (ECF No. 26-8 at 64-67). On September 14, 2018, the State Court entered a Judgment of Foreclosure and Sale ("Foreclosure Judgment"). LSF10 Mot., Ex. H; Lau Aff., Ex. 3 (ECF No. 26-4 at 7-15).

On October 24, 2019, the State Court entered an Order in the Foreclosure Action directing that the sale of the property must be scheduled on or before January 22, 2020 ("Sale Order"). LSF10 Mot., Ex. J; Lau Aff., Ex. 2 (ECF No. 26-4 at 5). A foreclosure sale was subsequently scheduled for December 11, 2019. LSF10 Mot. at 4. Mr. Lau appealed the Sale Order and filed a motion to stay the foreclosure sale. Lau Aff., Ex. AA (ECF No. 26-2); *id.*, Ex. BB (ECF No. 26-3). On December 10, 2019, the First Department denied Mr. Lau's motion without prejudice to renewal of the motion after service of a full set of motion papers on SLS and filing proof of service. LSF10 Mot., Ex. K; Lau Aff., Ex. EE (ECF No. 26-8 at 37).

**B. Bankruptcy Cases**

On April 30, 2019, Mr. Lau filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (the "First Bankruptcy Case") in the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). *In Re: Lau*, No. 19-11387 (Bankr. S.D.N.Y.), ECF No. 1. On September 17, 2019, the Bankruptcy Court entered an Order dismissing the First

---

35, 39.

[5]     LSF10 was eventually substituted as plaintiff in the Foreclosure Action. LSF10 Mot. at 4.

Bankruptcy Case *nunc pro tunc* to June 17, 2019 pursuant to 11 U.S.C. § 521(i). *Id.*, ECF No. 20; LSF10 Mot., Ex. L.

On December 10, 2019, Mr. Lau filed a second voluntary petition for relief under Chapter 7 of the Bankruptcy Code ("Second Bankruptcy Case") in the Bankruptcy Court. *In Re: Lau*, No. 19-13893 (Bankr. S.D.N.Y.), ECF No. 1. On January 6, 2020, Mr. Lau filed a Motion to Extend the Automatic Stay, wherein he requested (i) an extension of the automatic stay as to all creditors during the pendency of the case; (ii) vacatur of the State Court's Foreclosure Judgment; (iii) damages for alleged violations of the automatic stay; (iv) any other further relief the court deemed just and proper. *Id.*, ECF No. 9. On January 10, 2020, the Bankruptcy Court issued an Order to Show Cause why the automatic stay should not be extended and continued, and ordered that the automatic stay remain in effect pending a hearing on Mr. Lau's Motion to Extend the Automatic Stay. *Id.*, ECF No. 10. On February 11, 2020, LSF10 filed an opposition to Mr. Lau's motion. *Id.*, ECF No. 18.[6]

On February 18, 2020, the Bankruptcy Court held a hearing on Mr. Lau's Motion to Extend the Automatic Stay and LSF10's Motion for Relief from Stay. *See In re: Lau*, No. 19-13893 (Bankr. S.D.N.Y.), ECF No. 34. On February 20, 2020, the Bankruptcy Court issued an Order denying Mr. Lau's Motion to Extend the Automatic Stay in its entirety and terminating the automatic stay (the "Bankruptcy Order"). *Id*., ECF No. 22. On March 3, 2020, Mr. Lau filed a Notice of Appeal from the Bankruptcy Order. *Id.*, ECF No. 29. On March 19, 2020, the Bankruptcy Court issued an order dismissing Mr. Lau's Second Bankruptcy Case for failure to file certain information. *Id.*, ECF No. 37.

---

[6]     Appellee also filed a Motion for Relief from Stay on January 6, 2020, which Mr. Lau opposed by affirmation dated February 5, 2020. *In re: Lau*, No. 19-13893 (Bankr. S.D.N.Y.), ECF Nos. 8, 20. A hearing related to this motion was originally scheduled for February 5, 2020, but was adjourned to February 18, 2020. *Id.*, ECF No. 10.

### C.  Procedural History

On March 4, 2020, Appellant filed a Notice of Appeal from the Bankruptcy Court to this

Court. ECF No. 1. On March 12, 2020, Appellant moved for a temporary restraining order

(TRO) via Order to Show Cause to stay the Bankruptcy Order. ECF Nos. 3-5. On March 16,

2020, Appellant filed a designation of bankruptcy record on appeal and statement of issues.

ECF No. 6. On March 17, 2020, Appellee filed an opposition to Appellant's TRO application.

ECF No. 9. On March 18, 2020, the Court held a hearing on the Order to Show Cause and denied

Appellant's application for a TRO. March 18, 2020 Minute Entry. On April 8, 2020, Appellee

filed a pre-motion conference letter in connection with a motion to dismiss the Appeal.

ECF No. 15. The Court denied Appellee's request for a pre-motion conference, but granted

Appellee leave to file a motion to dismiss. ECF No. 16. On May 5, 2020, Appellee filed a

counter designation of bankruptcy record on appeal. ECF No. 17. On May 6, 2020, Appellee

filed the motion to dismiss ("LSF10 Mot."). ECF No. 18. On July 6, 2020, Appellant filed an

Affirmation in opposition to Appellee's motion to dismiss ("Lau Aff."), ECF No. 26, and on July

21, 2020, Appellee filed a reply in further support of their motion to dismiss, ECF No. 30.

Appellee's motion to dismiss is deemed fully briefed. After careful consideration, Appellee's

motion to dismiss is **GRANTED**.

### STANDARD OF REVIEW

The Court has jurisdiction to hear appeals from bankruptcy courts under 28 U.S.C.

§ 158(a), which provides that "[t]he district courts of the United States shall have jurisdiction to

hear appeals . . . from final judgments, orders and decrees . . . [and] with leave of the court, from

other interlocutory orders and decrees . . . of bankruptcy judges." "Generally in bankruptcy

appeals, the district court reviews the bankruptcy court's factual findings for clear error and its

conclusions of law de novo." *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 483 (2d Cir. 2012) (citing Fed. R. Bankr. P. 8013), *cert. denied sub nom. Law Debenture Tr. Co. of New York v. Charter Commc'ns*, 569 U.S. 968 (2013). "Under the clear error standard, '[t]here is a strong presumption in favor of a [bankruptcy] court's findings of fact if supported by substantial evidence,' and a reviewing court will not upset a factual finding 'unless [it is] left with the definite and firm conviction that a mistake has been made.'" *Morillo v. Wells Fargo Bank, N.A.*, No. 19-cv-8183, 2020 WL 2539068, at *2 (S.D.N.Y. May 19, 2020) (quoting *Travellers Int'l A.G. v. Trans World Airlines, Inc.*, 41 F.3d 1570, 1574 (2d Cir. 1994)) (alterations in the original).

Considering these standards, "the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *In re Motors Liquidation Co.*, No. 13-cv-1721, 2015 WL 1781238, at *1 n.1 (S.D.N.Y. Apr. 15, 2015) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.2d 471, 474 (2d Cir. 2006)), *appeal dismissed*, No. 15-1643 (2d Cir. June 23, 2015).

## DISCUSSION

This Appeal challenges the Bankruptcy Order denying Appellant's motion (1) extending the automatic stay as to all creditors, (2) vacating the State Court's Foreclosure Judgment, (3) awarding damages for violation of the automatic stay, and (4) awarding any other further relief the court deemed just and proper. To the extent Appellant challenges the portion of the Bankruptcy Order denying the extension of the automatic stay and terminating the automatic stay, this appeal is moot and must be dismissed. To the extent Appellant challenges the portion of the Bankruptcy Order denying vacatur of the State Court's Foreclosure Judgment, the appeal is barred by the *Rooker-Feldman* doctrine. The Court also *sua sponte* raises the issue as to

whether the Appeal should be dismissed to the extent it challenges the portion of the Bankruptcy

Order denying Appellant damages for alleged violations of the automatic stay and concludes that

it should be dismissed because there were no violations of the automatic stay.[7]

**I.      To the Extent Mr. Lau Challenges the Portion of the Bankruptcy Order Denying the Extension of the Automatic Stay and Terminating the Automatic Stay, the Appeal is Moot and Must Be Dismissed**

Appellee asserts that to the extent the Appeal concerns the Bankruptcy Court's denial of

the motion to extend the automatic stay and the termination of the automatic stay, this Appeal

must be dismissed as moot since the underlying bankruptcy case has been dismissed. This Court

agrees.

"When a bankruptcy case has been dismissed, and that dismissal is not itself on appeal,

an appeal of an interlocutory order of the bankruptcy court in that case is moot." *Moss v. 245 E.*

*25th Realty Corp.*, No. 02-cv-7555, 2003 WL 256780, at *2 (S.D.N.Y. Feb. 5, 2003) (citing

*Olive St. Inv., Inc. v. Howard Sav. Bank*, 972 F.2d 214, 215 (8th Cir. 1992) and *In re Ames*, 973

F.2d 849, 852 (10th Cir. 1992), *cert. denied sub nom. Ames v. Sundance State Bank*, 507 U.S.

912 (1993)); *cf. Morillo*, 2020 WL 2539068, at *2 n.3 (noting that if the dismissal itself is on

appeal then an "appeal from an interlocutory order is not mooted by the dismissal of the

bankruptcy proceeding by the Bankruptcy Judge"). *Moss* concerned the appeal of an

interlocutory order issued by the United States Bankruptcy Court for the Southern District of

New York which lifted the automatic stay of actions against appellant during ongoing

bankruptcy proceedings. *Id.* at *1. While the appeal was pending, the underlying bankruptcy case

---

[7] The Court has inherent authority to *sua sponte* dismiss a frivolous appeal brought by a *pro se* litigant. *See, e.g.*, *Pillay v. I.N.S.*, 45 F.3d 14, 17 (2d Cir. 1995) ("[C]ourt has inherent authority . . . to dismiss an appeal or petition for review as frivolous when the appeal or petition presents no arguably meritorious issue for our consideration"); *see also Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 364 (2d Cir. 2000) ("[W]e hold that district courts may dismiss a frivolous complaint *sua sponte* . . ., just as the Court of Appeals may dismiss frivolous matters in like circumstances.")

was dismissed, and the court dismissed the appeal as moot. *Id.* at *2.

To the extent Mr. Lau appeals from the Bankruptcy Court's denial of the motion to extend the automatic stay and the termination of the automatic stay, this Appeal must be dismissed as moot as well. Mr. Lau has appealed from an interlocutory order denying an extension of the automatic stay and terminating the automatic stay. However, while the Appeal was pending, the Bankruptcy Court dismissed the underlying bankruptcy case. Mr. Lau has not appealed the dismissal of the underlying bankruptcy case, nor could he at this stage, as the deadline to file that appeal was on April 2, 2020. LSF10 Mot. at 10 n.1; *see also* Fed. R. Bankr. P. 8002. We have considered Appellant's remaining arguments and find them to be without merit. Therefore, as far as the Appeal concerns the denial of the motion to extend the automatic stay and terminating the automatic stay, the Appeal must be dismissed as moot.[8]

## II.   The Court Lacks Subject Matter Jurisdiction to Grant Relief from the State Court Foreclosure Judgment Under the *Rooker-Feldman* Doctrine

The Bankruptcy Order also denied Appellant's request to vacate the State Court Foreclosure Judgment. To the extent that Appellant seeks to appeal the Bankruptcy Court's decision denying the vacatur of the State Court Foreclosure Judgment, the Court lacks jurisdiction over the Appeal under the *Rooker-Feldman* doctrine.

"The *Rooker-Feldman* doctrine provides that federal courts lack jurisdiction over a case if the exercise of jurisdiction would result in reversal or modification of a state court judgment. Where claims raised in a federal action are inextricably intertwined with a state court's determination, dismissal of the federal claims for lack of jurisdiction is proper." *Botsas v. United*

---

[8]     Mr. Lau appears to assert a claim for violation of his due process rights based on the fact that the Bankruptcy Court allegedly "avoid[ed] ruling" on Appellee's Motion for Relief from Stay. *See* Lau Aff. at 2. The Court disagrees. When the Bankruptcy Court denied Appellant's Motion to Extend the Automatic Stay, the Bankruptcy Court also terminated the automatic stay and thus, Appellee's Motion for Relief from Stay became moot.

*States*, 5 F. App'x 69, 70 (2d Cir. 2001) (internal citations and quotation marks omitted). "The *Rooker-Feldman* doctrine bars federal courts from hearing claims brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Clavin v. Cty. of Orange*, 38 F. Supp. 3d 391, 396 (S.D.N.Y. 2014) (quoting *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)) (internal quotation marks omitted), *aff'd*, 620 F. App'x 45 (2d Cir. 2015).

For the *Rooker-Feldman* doctrine to apply, the following elements must be established: (1) "the federal-court plaintiff must have lost in state court;" (2) "the plaintiff must 'complain[] of injuries caused by [a] state-court judgment;'" (3) "the plaintiff must 'invit[e] district court review and rejection of [that] judgment[];'" and (4) "the state-court judgment must have been 'rendered before the district court proceedings commenced.'" *Hoblock*, 422 F.3d at 85 (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.* 544 U.S. 280, 284 (2005)) (alterations in the original). "Courts in this Circuit have consistently held that the *Rooker-Feldman* doctrine bars an attack on the judgment of a foreclosure action in state court." *Gurdon v. Bank*, No. 15-cv-5674, 2016 WL 721019, at *5 (S.D.N.Y. Feb. 23, 2016) (listing cases), *report & recommendation adopted*, 2016 WL 3523737 (S.D.N.Y. June 22, 2016).

The Court concludes that all four elements required for the *Rooker-Feldman* doctrine to apply have been met. Mr. Lau lost in State Court; Mr. Lau is complaining of the injuries caused by the State Court's Foreclosure Judgment; Mr. Lau has invited this Court and the Bankruptcy Court to review and reject the State Court's Foreclosure Judgment; and the State Court entered the Foreclosure Judgment before Mr. Lau filed the Second Bankruptcy Case. Therefore, the Court lacks jurisdiction over the Appeal to the extent it challenges the Bankruptcy Court's

decision to deny vacatur of the State Court Foreclosure Judgment.

Appellant asserts that the *Rooker-Feldman* doctrine does not apply. *See* Lau Aff. at 9-13. His principal arguments are that the *Rooker-Feldman* doctrine (1) does not apply in cases involving fraud and (2) that it does not bar independent claims. *Id.* As to his first argument, "there is not a fraud exception to the *Rooker-Feldman* doctrine." *See Gurdon*, 2016 WL 721019, at *6 (internal citations omitted) (holding that "fraud upon the court" claim was barred by *Rooker-Feldman* doctrine); *see also Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 427 (2d Cir. 2014); *Worthy-Pugh v. Deutsche Bank Nat'l Tr. Co.*, 664 F. App'x 20, 21 (2d Cir. 2016).

*Vossbrinck* is on all fours with the instant case. In *Vossbrinck*, Plaintiff asserted that Defendants had "engaged in fraud during the foreclosure action by (1) misrepresenting that they had standing to seek foreclosure . . . and (2) submitting fraudulent title documents in the state action" and sought a declaration that the foreclosure judgment was "void." *Vossbrinck*, 773 F.3d at 426-27. The Second Circuit held that "to the extent [appellant] asks the federal court to grant him title to his property because the foreclosure judgment was obtained fraudulently, *Rooker-Feldman* bars [appellant's] claim." *Id.* at 427. The court reasoned that appellant invited review and rejection of the state judgment and was "asking the federal court to determine whether the state judgment was wrongfully issued . . . . This would require the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error." *Id.* The court explained that "the injury of which [appellant] 'complains'. . . and which he seeks to have remedied, is the state foreclosure judgment. This is evident from the relief [appellant] requests— title to and tender of his property and, in his brief on appeal, to have the state judgment declared 'void.'" *Id.*

In claiming that Appellee engaged in fraud in acquiring the Foreclosure Judgment,[9] Appellant "is asking the federal court to determine whether the state judgment was wrongfully issued," which "would require the federal court to review the state proceedings and determine that the foreclosure judgment was issued in error." *Vossbrink*, 773 F.3d at 427. Here, as in *Vossbrinck*, Appellant seeks to have the State Court Foreclosure Judgment vacated for fraud, evidence that the injury of which he complains and which he seeks to have remedied is the State Court Foreclosure Judgment. This is plainly barred by the *Rooker-Feldman* doctrine.[10]

Appellant's second argument that the *Rooker-Feldman* doctrine does not bar independent claims and therefore the Court has jurisdiction over his Appeal challenging the State Court Foreclosure Judgment also fails. Appellant is correct that the *Rooker-Feldman* doctrine does not bar consideration of claims "independent" from a state court judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 293 (2005) ("§ 1257 [does not] stop a district court from exercising subject-matter jurisdiction simply because a party attempts to litigate in federal court a matter previously litigated in state court. If a federal plaintiff 'present[s] some independent claim . . . then there is jurisdiction.'" (quoting *GASH Assocs. v. Rosemont*, 995 F.2d 726, 728 (7th Cir. 1993)). However, Appellant's argument is based on a fundamental misunderstanding of what it means for a claim to be independent. According to Appellant, Caliber is a "third party" because it "was never substituted as the Plaintiff in the state foreclosure action" and "there was

---

[9]     Appellant's arguments as to why the State Court Foreclosure Judgment should be vacated are similar to those asserted in *Vossbrinck* –that neither SLS nor LSF10 had standing to seek foreclosure and/or sell the property and that the documents recording the assignments were fraudulent. *See In re Lau*, No. 19-13893 (Bankr. S.D.N.Y.), ECF No. 9 at 19-25.

[10]    Appellant also appears to have attempted to state a claim for fraud upon the court, specifically the State Court and First Department. However, any claim by Appellant alleging a fraud on the State Court or First Department is impermissibly brought in the Bankruptcy Court or in this Court. *See In re Breitburn Energy Partners L.P.*, No. 16-11390, 2018 WL 2121805, at *5 (Bankr. S.D.N.Y. May 7, 2018) ("A claim of fraud on the court must be made in the court that was allegedly defrauded.") (citing *O'Neill v. Hernandez*, No. 08-cv-1689, 2010 WL 1257512, at *14 (S.D.N.Y. Mar. 25, 2010)); *see also Wagner Spray Tech Corp. v. Wolf*, 113 F.R.D. 50, 52 (S.D.N.Y. 1986).

no February 11, 2019 assignment [from Specialized to Caliber]." Lau Aff. at 10. Essentially, Appellant argues that because Caliber "neither appeared nor filed any pleading" in the state court action, Caliber is a "new, third party" so any claims involving Caliber "can be considered [] new, independent claim[s] and, therefore, not barred by the *Rooker-Feldman* doctrine." Even assuming *arguendo* that Appellant's assertion that Caliber is a "third party" is correct, this logic is fatally flawed. The Second Circuit has construed "independent" claim to "mean simply a claim that did not allege an injury caused by the state court judgment." *In re Handler*, No. 05-mc-139, 2006 WL 8440258, at *3 (E.D.N.Y. May 31, 2006) (citing *Hoblock*, 422 F.3d at 87). In other words, an "independent" claim was one "that did not satisfy the second requirement [of the *Rooker-Feldman* doctrine]." *Id.* The assertion that Caliber is a "third party" does not automatically mean that any claims or alleged injuries related to Caliber are "independent" from the state court judgment. In fact, Appellant's reasoning betrays that his claim is fundamentally tied to the State Court Foreclosure Judgment and is not "independent." The Court has considered the remainder of Appellant's arguments and finds them to be without merit.

### III.    There Were No Violations of the Second Automatic Stay

Appellant suggests that the Bankruptcy Court erred when they denied his motion for damages resulting from violations of the automatic stay. The Court disagrees. Generally, after filing a bankruptcy petition, an automatic stay arises pursuant to 11 U.S.C. § 362(a). "The filing . . . creates an estate consisting of all legal or equitable interests of the debtor in property at the time of the filing as well as other property that may be recaptured during the bankruptcy. The scope of the stay is broad, encompassing almost any type of formal or informal action taken against the debtor or the property of the [bankruptcy] estate." *In re Salov*, 510 B.R. 720, 726 (Bankr. S.D.N.Y. 2014) (internal citations and quotation marks omitted). "[I]f the debtor had a

bankruptcy case pending within the previous year, the automatic stay will only last for 30 days, as the 'case is presumptively filed not in good faith.'" *In re Pezzo*, No. 15-cv-162, 2015 WL 5853862, at *2 (S.D.N.Y. Oct. 7, 2015) (quoting 11 U.S.C. § 362(c)(3)(C)). "The debtor may move to continue the automatic stay by showing 'clear and convincing evidence' that the second bankruptcy filing was made in good faith." *Id.* (citing 11 U.S.C. § 362(c)(3)(C)). Conducting a foreclosure sale of the debtor's property constitutes a violation of the stay. *See In re Ebadi*, 448 B.R. 308, 314 (Bankr. E.D.N.Y. 2011).

Mr. Lau filed the First Bankruptcy Case on April 30, 2019 and obtained an automatic stay ("First Automatic Stay") which terminated when the case was dismissed on September 17, 2019 *nunc pro tunc* to June 17, 2019. When Mr. Lau filed the Second Bankruptcy Case on December 10, 2019, he obtained an automatic stay from that date until at least January 9, 2020 ("Second Automatic Stay"). In his Motion to Extend the Automatic Stay, Mr. Lau stated that "[Counsel for SLS] filed a Notice of Sale on December 20, 2019, a time that is covered by the automatic stay that is in effect . . . Thus, [Counsel for SLS] has again violated the automatic stay." *In re Lau*, No. 19-13893 (Bankr. S.D.N.Y.), ECF No. 9 at 29 (citing to Ex. LL). Exhibit LL is an Affidavit of Service of a Notice of Sale. *Id.*, ECF No. 9-7 at 75-79. The Notice of Sale itself was served on Mr. Lau on November 5, 2019, over a month before the Second Automatic Stay began. *Id*. December 20, 2019 indicates the day that the Affidavit of Service was filed with the State Court. The filing of the Affidavit of Service is a "ministerial act" and is not a violation of the automatic stay. *See Rexnord Holdings, Inc. v. Biderman*, 21 F.3d 522, 527 (2d Cir. 1994) ("[W]e do not believe that the simple and 'ministerial' act of the entry of a judgment by the court clerk constitutes the continuation of a judicial proceeding under section 362(a)(1)"); *cf. In re Ebadi*, 448 B.R. at 314 (conducting a foreclosure sale was a violation of Section 362(a)(1)). In

fact, Mr. Lau received an email from counsel for SLS on December 10, 2019 letting him know

that the sale scheduled for the next day was cancelled due to Mr. Lau's bankruptcy filing. *Id.*,

ECF No. 9-7 at 82. Thus, to the extent Mr. Lau's Appeal challenges the portion of the order

denying him damages for alleged violations of the stay, the Appeal is dismissed.[11]

## CONCLUSION

For the aforementioned reasons, Appellee's motion to dismiss Mr. Lau's Appeal is

**GRANTED**.

**SO ORDERED.**

**Dated:  February 26, 2021**
            **New York, New York**

ANDREW L. CARTER, JR.
United States District Judge

---

[11]     Mr. Lau also suggests that filing an Affidavit of Service of a Notice of Sale with the State Court prior to a sale scheduled for May 1, 2019 constituted a violation of the First Automatic Stay. *See In re Lau*, 19-13893 (Bankr. S.D.N.Y.), ECF No. 9 at 29. For the same reasons discussed above, this did not constitute a violation of the First Automatic Stay.

        Mr. Lau also cited to Exhibit BB which contains arguments about other actions that he asserts constitute violations of the First Automatic Stay. *Id.* These essentially boil down to counsel for SLS "refus[ing] to inform the Lower Court" about the bankruptcy petition filed by Mr. Lau. *See id.*, ECF No. 9-2 at 27-31. While it is true that "[t]he onus is on the creditor to inform other courts of a debtor's bankruptcy filing and to discontinue any pending proceedings that run afoul of the stay provisions," *In re Grinspan*, 597 B.R. 725, 733-34 (Bankr. E.D.N.Y. 2019), Mr. Lau does not assert what "deliberate acts" were taken by Appellee in violation of the stay that would justify an award of actual damages. *See In re Crysen/ Montenay Energy Co.*, 902 F.2d 1098, 1105 (2d Cir. 1990) ("[A]ny deliberate act taken in violation of a stay, which the violator knows to be in existence, justifies an award of actual damages."). Mr. Lau only asserts that the State Court scheduled a status conference for October 24, 2019, and by that point, the stay had already been lifted. *See In re Lau*, 19-13893 (Bankr. S.D.N.Y.), ECF No. 9-2 at 27-28; *see id.*, ECF No. 9-3 at 5. Further, Mr. Lau acknowledges that counsel for SLS informed the First Department about his bankruptcy petition on May 28, 2019. *See id.*, ECF No. 9-2 at 30; *see also id.*, ECF No. 9-5 at 5-6.

        Mr. Lau also asserts that counsel for SLS violated the First Automatic Stay when counsel for SLS filed an assignment of the Mortgage from SLS to Caliber (i.e., LSF10). Even assuming *arguendo* that an assignment of a mortgage constitutes a violation of the automatic stay, this argument fails because the initial assignment from SLS to LSF10 took place on February 11, 2019, months before the stay began. The corrective assignment dated July 25, 2019 merely corrected the instrument number. This "ministerial" action does not constitute a violation of the automatic stay.

        Therefore, to the extent that Mr. Lau appeals from the portion of the order denying him an award of damages for violations of the First Automatic Stay, the Appeal is dismissed.